UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| S.N.B, a minor by her mother, | ) | |
| SHANNON JORDAN, | ) | |
|    Plaintiff, | ) | |
| | ) | |
|   vs. | ) | 1:11-cv-1519-TAB-RLY |
| | ) | |
| MICHAEL J. ASTRUE | ) | |
| Commissioner of Social Security, | ) | |
|    Defendant. | ) | |

**ORDER ON PLAINTIFF'S COMPLAINT SEEKING JUDICIAL REVIEW**

**I.  Introduction**

  Plaintiff Shannon Jordan seeks judicial review of an Administrative Law Judge's decision denying her minor daughter ("S.N.B.") supplemental social security income under the Social Security Act.  [Docket No. 1.]  For the reasons below, the decision of the Commissioner is affirmed.

**II.  Discussion**

  *A.  Standard of review*

  "[A] child is disabled if she has a 'medically determinable physical or mental impairment, which results in marked and severe functional limitations' that 'has lasted or can be expected to last for a continuous period of not less than 12 months.'"  *Jelinek v. Astrue*, 662 F.3d 805, 809 (7th Cir. 2011) (citing 42 U.S.C. § 1382c(a)(3)(C)(I)).  This assessment requires a three-step inquiry:

  First, if the child is engaged in substantial gainful activity, the ALJ will deny the claim.
  Second, if the child does not have a severe medical impairment or combination of

impairments, then she is not disabled. Third, the child's impairments must meet, medically equal, or functionally equal any of the listings contained in 20 C.F.R. Pt. 404, Subpt. P, App. 1.

*Jelinek*, 662 F.3d at 809–10 (citing 20 C.F.R. § 416.924(a)). "If the Appeals Council denies a request for review, as it did here, the ALJ's decision becomes the final decision of the Commissioner of Social Security." *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The Court shall reverse the Commissioner's "denial of disability benefits only if the decision is not supported by substantial evidence or is based on an error of law." *Id.* "Although a mere scintilla of proof will not suffice to uphold an ALJ's findings, the substantial evidence standard requires no more than such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Blakes v. Barnhart*, 331 F.3d 565, 568 (7th Cir. 2003).

  B. *Substantial evidence*

  Plaintiff challenges the ALJ's step-two determination. At step two, the ALJ concluded that "claimant has an impairment or combination of impairments that cause not more than minimal functional limitations" because "the claimant has had no severe attacks that have required hospitalizations, she takes routine medications, and her consultative exam was within normal range." [A.R. at 23.] Plaintiff contends that "the claimant's [sic] meets or equals Listing 103.03C2 and thus clearly proves that her asthma was a severe impairment."[1] [Docket No. 17 at 11.] This argument is problematic for several reasons.

  Step two does not address whether S.N.B. meets or equals a listing. Step two requires the ALJ to determine whether S.N.B's impairment is severe and step three requires the ALJ to

_____

[1]Plaintiff also mentions listings 103.03(A) and (B), but fails to develop any argument related to either of these listings.

2

determine whether she satisfies relevant listings.  20 C.F.R § 416.924.  Plaintiff's argument

inappropriately combines these steps together.  Plaintiff's argument begins by stating that she is

challenging the ALJ's step-two determination.  [Docket No. 17 at 7.]  Plaintiff then cites several

cases, switching between a discussion of step two and step three.  [*Id.* at 9.]  Some of these cases

are irrelevant to the issues raised by the parties.  [*Id.* (citing *Lopez-Navarro v. Barnhart*, 207 F.

Supp. 2d 870 (E.D. Wis. 2002) (discussing treating physicians).]  Plaintiff then asserts that he

can satisfy step two by establishing step three: "[T]he claimant's [sic] meets or equals Listing

103.03C2 and thus clearly proves that her asthma was a severe impairment."  [*Id.* at 11.]

     The ALJ did not address step three because he determined that S.N.B. does not have a

severe impairment or combination of severe impairments.  Unless Plaintiff satisfies step two, the

ALJ need not consider step three.  20 C.F.R § 416.924.  Although incorrectly combining two

different analyses normally will not prevent the Court from separating Plaintiff's analyses in an

attempt to review the ALJ's decision, the remainder of Plaintiff's argument simply consists of

listing over four pages of medical evidence without any substantive analysis.  [*See* Docket No.

17 at 11–15; Docket No. 26 at 5–9.]  This style of argument is unhelpful and inhibits—which

Plaintiff's counsel has unfortunately utilized in prior cases—any meaningful review of the ALJ's

decision.

     In *Firkins v. Astrue*, No. 1:09–cv–00923 –JMS–TAB, 2010 WL 3037257, at *4 n.7 (S.D.

Ind. Aug. 3, 2010), the Court "strongly encourage[d] counsel to pay close attention to the

application of the law to the facts in subsequent briefs."  Plaintiff's counsel was told that if he

"continues to file briefs with such sparse argumentation, he runs the risk that the Court will find

his arguments waived for review."  *Id.*  Despite these warnings, Plaintiff claims that the ALJ

"ignored" or "selectively considered" medical evidence and proceeds to list over four pages of medical evidence unsupported by substantive analysis.  [*See* Docket No. 17 at 11–15; Docket No. 26 at 5–9.]  In several instances Plaintiff inaccurately claims that the ALJ ignored medical evidence.  For example, Plaintiff claims that the "ALJ ignored the 5-19-09 Methodist Hospital, chest x-ray . . . ."  [Docket No. 17 at 12.]  However, the ALJ's decision specifically states that a "chest x-ray on May 19, 2009, taken in response to symptoms of 'cough, asthma, wheezing,' indicated changes likely secondary to reactive airways disease and not viral bronchitis."  [A.R. at 21.]

The Court has previously found this style of argument by Plaintiff's counsel resulted in waiver due to lack of development.  *See D.O.B. ex rel. Dudley v. Astrue*, No. 1:10-CV-1142-WTL-TAB, 2011 WL 3739366, at *2 (S.D. Ind. Aug. 23, 2011) (citing *Firkins*, 2010 WL 3037257; *Williams v. Astrue*, No. 1:08–cv–1353–JMS–TAB, 2010 WL 2673867 (S.D. Ind. June 29, 2010); *Idiaghe v. Astrue*, No. 1:08–cv–1354–WTL–DML, 2010 WL 1190326 (S.D. Ind. Mar. 23, 2010); *Poston v. Astrue*, No. 1:08–cv–1543–JMS–LJM, 2010 WL 987734 (S.D. Ind. Mar. 15, 2010); *Whitlow v. Astrue*, No. 1:07–cv–1173–WTL–TAB, 2009 WL 648602 (S.D. Ind. Mar. 10, 2009)), adopted by *D.O.B. ex rel. Dudley v. Astrue*, No. 1:10-CV-1142-WTL-TAB, 2011 WL 3740833, at *1 (S.D. Ind. Aug. 23, 2011).  Continuing to compel "the court to take up a burdensome and fruitless scavenger hunt for arguments is a drain on its time and resources." *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 537 n.5 (7th Cir. 1992).  "Judges are not like pigs, hunting for truffles buried in briefs."  *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).  Waiver is therefore appropriate.

Even assuming that Plaintiff is able to show that the ALJ erred at step two, Plaintiff does

not satisfy step three.  Listing 103.03(C)(2) requires (1) "Persistent low-grade wheezing between acute attacks or absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators," and (2) "Short courses of corticosteroids that average more than 5 days per month for at least 3 months during a 12-month period."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 103.03(C)(2).  In *Sanchez ex rel. Sanchez v. Barnhart*, No. 03-C-537-C, 2005 WL 752220, at *9 (W.D. Wis. Mar. 30, 2005), affirmed *Sanchez v. Barnhart*, 467 F.3d 1081 (7th Cir. 2006), the court made the following observations:

> inhaled corticosteroids are long-term control medications used to prevent exacerbations by reducing inflammation in the airways. *See* "Medications and immunotherapy for asthma," Mayo Clinic Staff, August 13, 2004, http://www.mayclinic.com/invoke.cfm?id=AP00008,. Low dose formulations of such inhaled corticosteroids, like that prescribed for plaintiff, are indicated for the treatment of mild persistent asthma. *See* NAEPP Expert Panel Report: Guidelines for the Diagnosis and Management of Asthma-Update on Selected Topics 2002, NIH Publication No. 02-505 (June 2002). In contrast, oral and intravenous corticosteroids, such as prednisone and methylprednisolone, are used to treat acute asthma attacks or severe persistent asthma. *Id.* In general, because of the serious side effects associated with the use of such steroids, they generally are not prescribed for long term use. "Medications and immunotherapy for asthma," http:// www.mayoclinic.com/invoke.cfm?id=AP00008. It is clear that the commissioner's use of the term "short courses of corticosteroids" in Listing 103.03C2 refers to this latter form of steroids and not to long-term, daily use of a steroid inhaler. To conclude otherwise would lead to the absurd result that thousands of children with only mild asthma could be found disabled under the Social Security Act.

The record reflects that Plaintiff took four medications: Flovant, Flonase, Pulmicort, and Albuterol.  [A.R. at 157, 215, 218–22.]  These medications are not the type of corticosteroids contemplated by listing 103.03(C)(2).  *See Collier ex rel. K.L.C. v. Astrue*, No. 1:09-CV-0066-LJM-TAB, 2010 WL 481038, at *3–5 (S.D. Ind. Feb. 1, 2010) (using Albuterol and Flovant on a daily basis does not satisfy the listing); "Treatments & Drugs," Mayo Clinic Staff, Mar. 1, 2013, http://www.mayoclinic.com/health/asthma/DS00021/DSECTION= treatments-and-drugs (explaining that Fluticasone (Flovant and Flonase) and Budesonide (Pulmicort) are inhaled

corticosteroids and Albuterol is a short-acting beta agonists or bronchodilators).  Accordingly, the lack of discussion related to listing 103.03(C)(2) is not a reversible error.

      *C.      Credibility*

    Plaintiff also claims that the ALJ's credibility determination requires reversal because it is perfunctory.  [Docket No. 17 at 19.]  The ALJ's decision states that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with finding that the claimant has no severe impairment or combination of impairments for the reasons explained below."  [A.R. at 21.]  Plaintiff is correct that the Seventh Circuit has rejected this exact type of boilerplate language in some cases.  *See Bjornson v. Astrue*, 671 F.3d 640, 644–45 (7th Cir. 2012); *Martinez v. Astrue*, 630 F.3d 693, 696 (7th Cir. 2011).  In those cases, the ALJ used the above boilerplate language to reject evidence "without linking the conclusory statements contained therein to evidence in the record or even tailoring the paragraph to the facts at hand, almost without regard to whether the boilerplate paragraph has any relevance to the case."  *Bjornson*, 671 F.3d at 644–45.  However, this is not one of those cases.

    The ALJ's decision begins with generic boilerplate language, but is followed by an adequate discussion of the evidence.  The ALJ fully considered the medical evidence and determined that S.N.B. has a diagnosis of Asthma, is prescribed numerous medications, and has some symptoms of short breath, coughing, and wheezing.  [A.R. at 23.]  But the ALJ properly noted other evidence that is inconsistent with claims of intensity, persistence, and limiting effects.  Some of this evidence includes:

- Doctor Steven Roush's and Joseph Gaddy's conclusion that S.N.B.'s impairment was not severe [A.R. at 21];
- January 15, 2008, July 12, 2008, and May 2, 2008, medical records that do not indicate coughing or wheezing despite Plaintiff's allegation that S.N.B. has been disabled since birth [*Id.*];
- March 28, 2009, exam records that S.N.B.'s "oxygen level was 99 percent on [sic] room air" [*Id.*];
- "Patient stated that she is exposed to second-hand tobacco use" [*Id.*]
- May 19, 2009, chest x-ray indicates that symptoms of cough, asthma, and wheezing are likely due to secondary reactive airways disease and not viral bronchitis [*Id.*];
- May 26, 2009, records indicate "breath sounds were clear and respirations were regular" and "oxygen level was 99 percent and no breathing problems were noted" [*Id.*];
- August 5, 2009, "exam notes stated her lungs were within normal limits and clear bilaterally" [A.R. at 22];
- September 1, 2009, "exam showed the claimant's lungs were clear with no wheezing" [*Id.*];
- No asthma related hospitalizations in 2010 [*Id.*];
- The Little Duckling Day Care statement that S.N.B. has trouble breathing is given little weight because it was unsigned and is an unidentified opinion.  [*Id.*]

Based on this evidence, the ALJ reasonably concluded that intensity, persistence, and limiting effects of asthmatic symptoms were not credible to the extent that S.N.B. has a severe disability or combination of severe disabilities.  Thus, unlike *Bjornson* and other similar cases, the ALJ adequately addressed the contrary evidence and built a logical bridge supporting his credibility determination.  *See Webb v. Astrue*, No. 11-CV-2276, 2013 WL 139879, at *24 (N.D. Ill. Jan. 10, 2013); *Stalcup v. Astrue*, No. 1:11-CV-0486-JMS-DKL, 2012 WL 1231736, at *6 n.4 (S.D. Ind. Apr. 12, 2012).

**III.    Conclusion**

For the reasons above, the decision of the Commissioner is affirmed.  Judgment shall issue accordingly.

DATED:   03/11/2013

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Patrick Harold Mulvany
patrick@mulvanylaw.com